UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KEITH ADAIR DAVIS,

Plaintiff,

v.

WASHINGTON STATE
DEPARTMENT OF CORRECTIONS,
et al.,

Defendants.

CASE NO. 3:16-CV-05129-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: August 11, 2017

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Plaintiff Keith Adair Davis, proceeding *pro se* and *in forma pauperis*, initiated this civil rights action on February 19, 2016. Presently pending before the Court are Defendants' Motion for Summary Judgment ("DOC Motion") [1] and Defendant Robertson Motion for Summary Judgment ("Robertson Motion"). Dkt. 59, 92.

---

[1] DOC Motion was filed on behalf Defendants Washington State Department of Corrections, G. Hammond, Superintendent, WCC, Kenny, Kelli Delp, C/O Kinnamon, C/O Barcelona, G. Robbins, Lori Dale, C/O Clouatre, C/O Pugh, CC3 Toby Vaughn, Allison Comstock, Dean Mason, Lt. Hayward, D. MacWilliam, DOC Secretary, Tony Dunnington, Kevin Bovenkamp, Don Griffin, Patty, Shawn E. Brooks, Mr. Thompson, Dr. Lagano, Mr. Smack, Sgt. Comstock, and Risa Klemme. *See* Dkt. 59. The Court notes the Motions for Summary Judgment have been filed on behalf of all Defendants named in this action.

1    The Court concludes Plaintiff has failed to sufficiently rebut Defendants' summary

2    judgment showings regarding Plaintiff's retaliation, Eighth Amendment, due process, and

3    Americans with Disabilities Act ("ADA") claims. The Court also finds Plaintiff has failed to

4    state a claim for which relief can be granted as to his access to the grievance process, conspiracy,

5    and access to courts claims. Accordingly, the Court recommends the DOC Motion and

6    Robertson Motion be granted.

7                                      **BACKGROUND**

8        Plaintiff, who is currently incarcerated at Washington Corrections Center ("WCC"),

9    alleges he suffers from Multiple Sclerosis and is confined to a wheelchair. Dkt. 11. He contends

10   his constitutional rights were violated when Defendants, employees at WCC, retaliated against

11   him, denied him appropriate medical care, and denied him housing which complied with the

12   Americans with Disabilities Act ("ADA"). *Id.*

13       The DOC Motion was filed on November 30, 2016 and the Robertson Motion was filed

14   on March 30, 2017. Dkt. 59, 92. After several extensions of time, Plaintiff filed a response to the

15   Motions on May 30, 2017. *See* Dkt. 111.[2] Defendants have filed their replies. Dkt. 99, 107.

16                                   **STANDARD OF REVIEW**

17       Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant

18   summary judgment if the movant shows that there is no genuine dispute as to any material fact

19   and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or

20   is genuinely disputed must support the assertion by:

21

22   _____

23       [2] The Court notes Plaintiff's Response and Declaration were received by the Court after the filing deadline.
     *See* Local Rule 7; *see also* Dkt. 90, 106, 111. However, the Response and Declaration were dated prior to the filing
     deadline and Defendants have not objected to the Court's consideration of Plaintiff's Response and Declaration.

24   Accordingly, the Court considered the Response and Declaration in ruling on the Motions for Summary Judgment.

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson*, 477

1    U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No

2    longer can it be argued that any disagreement about a material issue of fact precludes the use of

3    summary judgment."). In other words, the purpose of summary judgment "is not to replace

4    conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

5    *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly

6    support an assertion of fact or fails to properly address another party's assertion of fact as

7    required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

8    materials--including the facts considered undisputed--show that the movant is entitled to it[.]"

9    Fed R. Civ. P. 56(e)(3).

10    **DISCUSSION**

11    In the Motions, Defendants contend and the Court finds Plaintiff failed to demonstrate (1)

12    supervisory Defendants are liable; (2) he was retaliated against; (3) Eighth Amendment

13    violations; (4) a Fourteenth Amendment due process violation; and (5) a viable claim under the

14    ADA. Dkt. 59, 92. *Id.* The Court also finds Plaintiff has failed to state claims of (6) denial of

15    access to the grievance process; (7) conspiracy; and (8) denial of access to courts.

16    In support of the DOC Motion, the DOC Defendants provide the following evidence:

17    Declarations of Defendant Kinnaman, non-party Karen Reese, non-party Norman Goodenough,

18    Defendant Dunnington, Defendant Vaughn, Defendant Longano, non-party Aaron Broumley,

19    and Defendant Delp; portions of Plaintiff's prison records; and photographs of a prison cell and

20    shower. Dkt. 60-67. Defendant Robertson filed his own Declaration and portions of Plaintiff's

21    prison medical records to support the Robertson Motion. Dkt. 93. In response to the Motions,

22

23

24

1    Plaintiff filed his own Declaration. Dkt. 106. Further, Plaintiff's Amended Complaint was signed

2    under penalty of perjury and is being considered as evidence. Dkt. 11.[3]

3        **I.    Supervisory Liability**

4        Plaintiff alleges Defendants "DOC Secretary," "WCC Superintendent," Bovencamp,

5    Mason, Smack, and Longano[4] are liable because they are in some type of supervisory position or

6    position of responsibility. *See* Dkt. 11, ¶¶ 116-120. Section 1983 supervisory liability cannot be

7    based on *respondeat superior*. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658,

8    691 (1978). A § 1983 action may not be brought against a supervisor on a theory that the

9    supervisor is liable for the acts of his or her subordinates. *See Polk County v. Dodson*, 454 U.S.

10   312, 325 (1981). Further, to state a claim against any individual Defendant, Plaintiff must allege

11   facts showing the individual Defendant participated in or directed the alleged violation, or knew

12   of the violation and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194

13   (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999). Because vicarious liability is inapplicable to

14   a § 1983 suit, Plaintiff must plead each Defendant, through his or her own individual actions, has

15   violated Plaintiff's constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

16       Here, Plaintiff alleges, in a conclusory manner, Defendants "DOC Secretary," "WCC

17   Superintendent," Bovencamp, Mason, and Smack knew of the violations and allowed the

18   violations to continue. Dkt. 11, ¶¶ 116-120. Plaintiff fails to allege facts showing these five

19   Defendants participated in or directed subordinates to commit the alleged violations. He also

20

21   _____

22       [3] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

23

24       [4] Plaintiff named Defendant Lagano in the Amended Complaint. *See* Dkt. 11, ¶ 11. The parties have corrected the spelling to Longano. *See* Dkt. 59, 106.

1    fails to specify how each Defendant was aware Plaintiff's rights were allegedly being violated.

2    *See id.*

3    　　　　Plaintiff failed to provide *any* allegations in the body of his Amended Complaint against

4    Defendant Longano. *See* Dkt. 11. Plaintiff merely names him as a Defendant and states he is the

5    medical director of WCC. *See id.* at ¶ 11. Plaintiff did not allege any facts against Defendant

6    Longano in the Amended Complaint; therefore, he has failed to show Defendant Longano

7    personally participated in any alleged constitutional violation or directed his subordinates to

8    violate Plaintiff's constitutional rights. *See* Dkt. 11.[5]

9    　　　　As Plaintiff has failed to allege facts showing Defendants "DOC Secretary," "WCC

10   Superintendent," Bovencamp, Mason, Smack, and Longano personally participated in the alleged

11   constitutional violations, Plaintiff has failed to state a claim against these 6 Defendants.

12   Accordingly, the Court recommends DOC Motion be granted as to Defendants "DOC

13   Secretary," "WCC Superintendent," Bovencamp, Mason, Smack, and Longano.

14   　　**II.    Retaliation**

15   　　　　Plaintiff alleges (1) Defendants Kinnaman, Barcelona, Pugh, and Clouatre's friends,

16   relatives, and coworkers harassed and targeted Plaintiff after Plaintiff filed a staff misconduct

17   grievance; (2) Defendants Kinnaman and Barcelona wrote a malicious infraction against Plaintiff;

18

19   --------------------------------------------

20   　　　[5] In his Declaration, Plaintiff states he spoke with Defendant Longano about his serious medical needs and his conflicts with WCC staff members. Dkt. 106, ¶ 20. Plaintiff also states Defendant Longano verified that

21   Defendant Hammond was aware of Plaintiff's medical problems, but a care plan could not be developed until Plaintiff was transferred to a new facility. *Id.* Plaintiff cannot raise new allegations in a response to a motion for

22   summary judgment. Therefore, the Court will not consider the factual statements regarding Defendant Longano contained in Plaintiff's Declaration. *Pickern v. Pier 1 Imports (U.S.), Inc.,* 457 F.3d 963, 965 (9th Cir. 2006)

23   (finding that a district court need not address allegations raised for the first time in response to a motion for summary judgment if the plaintiff's "pleadings did not provide sufficient notice of those allegations."); *McNeely v. Cty. of Sacramento,* 344 Fed. Appx. 317, 319 (9th Cir. 2009) (finding § 1983 plaintiff could not raise a claim for the

24   first time as argument in opposition to the county's motion for summary judgment).

REPORT AND RECOMMENDATION - 6

1    and (3) Defendant Kelly escalated medical conflicts by being argumentative, retaliatory, and

2    vindictive towards Plaintiff. Dkt. 11, ¶¶ 83, 88, 103.[6]

3         To prevail on a retaliation claim, a plaintiff must allege and prove the defendants retaliated

4    against him for exercising a constitutional right and the retaliatory action did not advance

5    legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez*,

6    108 F.3d 265, 267 (9th Cir. 1997). A prisoner suing a prison official under § 1983 for retaliation

7    for engaging in protected speech must allege "the type of activity he engaged in was protected

8    under the first amendment and that the state impermissibly infringed on his right to engage in the

9    protected activity." *Rizzo v. Dawson,* 778 F.2d 527 (9th Cir. 1983).

10        Within the prison context, a viable claim of First Amendment retaliation entails five
       basic elements: (1) An assertion that a state actor took some adverse action against
11       an inmate (2) because of (3) that prisoner's protected conduct, and that such action
       (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action
12       did not reasonably advance a legitimate correctional goal.

13   *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "Mere speculation that defendants

14   acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

15        Here, Plaintiff provides only speculation that Defendants retaliated against him. *See* Dkt.

16   11. Plaintiff states he was targeted and harassed because he could not move quickly due to his M.S.

17   and the retaliation escalated when he began utilizing the grievance process. Dkt. 106, Plaintiff Dec.

18   Plaintiff, however, fails to provide anything more than speculation that the targeting and

19   harassment were in retaliation for Plaintiff engaging in protected conduct. *See* Dkt. 11, 106. In fact,

20   it is unclear what retaliatory actions Defendants took against Plaintiff and if the alleged actions

21   were because of Plaintiff's protected conduct. Further, Plaintiff does not allege his speech was

22   _____

23   [6] In the Amended Complaint, Plaintiff states he received a third infraction from Defendant Kinnaman and
     Vaughn. *See* Dkt. 11, ¶ 94. Plaintiff does not allege his rights were violated when he was infracted by Defendant

24   Kinnaman and Vaughn. Plaintiff does provide any other factual allegations against Defendant Vaughn. Therefore,
     the Court recommends Defendant Vaughn be dismissed from this action.

1    chilled because of Defendants' actions. Therefore, Plaintiff has failed to state a retaliation claim in

2    his Amended Complaint. Accordingly, the Court recommends DOC Motion be granted as to

3    Plaintiff's retaliation claims.[7]

4        **III.    Eighth Amendment**

5        Plaintiff alleges his conditions of confinement and inadequate medical treatment violated

6    his Eighth Amendment rights. Dkt. 11.

7            A.    Conditions of Confinement

8        The Constitution does not mandate comfortable prisons, but neither does it permit

9    inhumane prisons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1970). Under the Eighth Amendment,

10   prison officials are required to provide prisoners with basic life necessities, such as food, clothing,

11   shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.3d 1080,

12   1107 (9th Cir. 1986). To state a claim for unconstitutional conditions of confinement, a plaintiff

13   must allege a defendant's acts or omissions deprived the inmate of "the minimal civilized measure

14   of life's necessities" and the defendant acted with deliberate indifference to an excessive risk to

15   inmate health or safety. *Allen v. Sakai,* 48 F.3d 1082, 1087 (9th Cir. 1994) (quoting *Farmer,* 511

16   U.S. at 834); *see Estate of Ford v. Ramirez—Palmer,* 301 F.3d 1043, 1049–50 (9th Cir. 2002).

17       "To violate the Cruel and Unusual Punishments Clause, a prison official must have a

18   sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal quotations omitted). "In

19   prison-conditions cases th[e] state of mind is one of 'deliberate indifference' to inmate health or

20   safety[.]" *Id.* (*citing Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). A prison official does not act

21

22       [7] In his Declaration, Plaintiff states Defendants Kenney, Robertson, and Delp harassed Plaintiff after he
     filed staff misconduct reports. *See* Dkt. 106, ¶ 19. Plaintiff did not raise claims of retaliation against these three
23   Defendants in the Amended Complaint. *See* Dkt. 11. As Plaintiff cannot raise new allegations in a response to a
     motion for summary judgment, the Court will not consider the factual statements asserting Defendants Kenney,
     Robertson, and Delp retaliated against Plaintiff which are contained in Plaintiff's Declaration. *Pickern*, 457 F.3d at
24   965; *McNeely*, 344 Fed. Appx. at 319.

1  with deliberate indifference "unless the official knows of and disregards an excessive risk to

2  inmate health or safety." *Farmer,* 511 U.S. at 837.

3          1.  *Verbal Threats*

4  First, Plaintiff alleges he was verbally assaulted and threatened by Defendants Kinnaman,

5  Barcelona, Kenney, Robertson, Robbins, Hayward, and Sgt. Comstock. Dkt. 11, ¶¶ 59, 67, 77,

6  87, 106, 108-09. Generally speaking, allegations of verbal threats and/or verbal harassment alone

7  are insufficient to state an Eighth Amendment claim. *See Farmer,* 511 U.S. at 834; *Rhodes,* 452

8  U.S. at 347; *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1992). The Ninth Circuit has expressly

9  held that "it trivializes the [E]ighth [A]mendment to believe a threat constitutes a constitutional

10 wrong." *Gaut v. Sunn,* 810 F.2d 923, 925 (9th Cir.1987) (finding a prisoner's claim against

11 prison guard for threatening physical violence not a sufficient deprivation to warrant protection

12 by the Eighth Amendment); *see also Corales v. Bennett,* 567 F.3d 554, 564–565 (9th Cir.2009)

13 (upholding and applying *Gaut* for the principle that mere threats cannot demonstrate

14 constitutional deprivation).

15 Here, Plaintiff has provided conclusory statements alleging he was verbally threatened

16 and harassed by various employees of WCC. *See* Dkt. 11. As threats and verbal harassment do

17 not constitute a constitutional violation, Plaintiff has failed to state an Eighth Amendment claim

18 based on Defendants Kinnaman, Barcelona, Kenney, Robertson, Robbins, Hayward, and Sgt.

19 Comstock allegedly threatening and verbally harassing Plaintiff. Accordingly, the Court

20 recommends Plaintiff's claim that he was verbally threatened and harassed be dismissed.

21          2.  *Wheelchair Accessible Housing*

22 Second, Plaintiff alleges his Eighth Amendment rights were violated when he was denied

23 wheelchair accessible housing in general population and the Intensive Management Unit

24

1  ("IMU") and was unable to shower while housed in IMU. Dkt. 11, ¶¶ 62, 73, 89. The evidence

2  shows Plaintiff was provided with a Health Status Report for a wheelchair and a lower bunk

3  during his initial intake medical review at WCC. Dkt. 65, Longano Dec., ¶ 5. Plaintiff was

4  assigned to a wheelchair accessible unit. *Id.*; *see also* Dkt. 62, Goodenough Dec., ¶ 4. The cells

5  where Plaintiff was housed were wide enough to fit a standard size wheelchair and were

6  equipped with grab bars or surfaces which could be utilized as a grab bar. Dkt. 62, Goodenough

7  Dec., ¶¶ 4, 5.

8      Plaintiff's wheelchair was unable to go into the IMU shower. Dkt. 66, Broumley Dec., ¶

9  5. Defendants' evidence shows, during his time in IMU, Plaintiff was offered assistance in

10  transferring from his wheelchair to the shower, but Plaintiff refused assistance. *Id.* Plaintiff states

11  no one was willing to lift him into the shower in IMU, but he was escorted to the infirmary for a

12  shower which was wheelchair accessible and equipped with a grab bar and shower chair. Dkt.

13  106, Plaintiff Dec., ¶¶ 23, 24. Plaintiff also states the cells in IMU did not have adequate floor

14  space, did not contain grab bars, and had a toilet which was too low for transferring. *Id.* at ¶ 23.

15      Plaintiff fails to provide evidence showing he was denied basic life necessities while

16  housed in IMU. While he asserts the cells were not ADA compliant, he does not provide any

17  evidence showing he was harmed as a result of the conditions of his confinement. More

18  importantly, there is no evidence showing any Defendant was aware Plaintiff's conditions of

19  confinement failed to meet "the minimal civilized measure of life's necessities." As such, there is

20  no evidence any Defendant acted with deliberate indifference to Plaintiff's need for additional

21  accommodations while housed at WCC. Accordingly, the Court recommends the DOC Motion be

22  granted regarding the claims that Plaintiff's wheelchair accessible housing violated the Eighth

23  Amendment.

24

REPORT AND RECOMMENDATION - 10

3.   *Asbestos and Lead Paint Exposure*

Plaintiff also alleges his conditions of confinement violated the Eighth Amendment because he was exposed to asbestos and lead paint. Dkt 11, ¶ 113. Plaintiff alleges Defendant Dale placed him in "harms way" because she covered up asbestos and lead paint, which is present at WCC. *Id*. Plaintiff sent Defendant Dale a grievance regarding the asbestos and lead paint at WCC and Defendant Dale "claimed [Plaintiff] did not know what [he] was talking about." Dkt. 106, ¶ 22. Plaintiff is aware there is friable asbestos at WCC because he is certified in asbestos inspection and removal and, when he was working for Walker Specialty Construction, Plaintiff recalled a survey which showed asbestos was present at WCC. *Id*.

Exposure to toxic substances may be a sufficiently serious condition to establish the first prong of an Eighth Amendment claim, depending on the circumstances of such exposure. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (inmate stated Eighth Amendment claim based upon possible future harm to health, as well as present harm, arising out of exposure to second-hand smoke).[8] The plaintiff "must show that he himself is being exposed to unreasonably high levels" of the toxic substance. *Id*. Moreover, determining whether the condition violates the Eighth Amendment "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the toxic substance]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. at 36.

---

[8] Although *Helling* was a second-hand smoke case, the rule in *Helling* has been applied to other toxic exposure cases. *See Wallis v. Baldwin*, 70 F.3d 1074 (9th Cir. 1995) (citing *Helling* in a case in which an inmate had been exposed to asbestos during a prison cleaning operation); *Thao v. Dobie*, 2017 WL 2806744, at *2 (N.D. Cal. June 29, 2017) (applying *Helling* in an asbestos exposure case).

1    Regardless of whether Plaintiff was exposed to a serious risk of harm, Plaintiff fails to

2    show Defendant Dale was acted with deliberate indifference to Plaintiff's alleged exposure to a

3    serious risk of harm because of exposure to asbestos or lead paint while housed at WCC. While

4    Defendant Dale responded to a grievance, her response indicates she was unaware asbestos or lead

5    paint was present at WCC and did not believe Plaintiff's assessment of the toxins. Thus, there are

6    no allegations or evidence showing Defendant Dale was aware of facts from which an inference

7    could be drawn that Plaintiff was exposed to a toxin and drew the inference. Accordingly, the

8    Court recommends the deliberate indifference claim alleged against Defendant Dale be dismissed.[9]

9    *See Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the

10   inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

11   inference."); *Wereb v. Maui County*, 727 F.Supp.2d 898, 914-16 (D. Hawai'i 2010) (finding no

12   evidence to show the defendants were subjectively aware of a serious medical need when the

13   defendants stated they did not believe the plaintiff needed medical attention); *Mejia v. McCann*,

14   2010 WL 5149273, *8-*9 (N. D. Ill. 2010) (finding "existence of lead paint on walls does not state

15   a viable constitutional claim," and there was no "competent evidence that lead paint in his

16   cellhouse has caused [plaintiff] injury").

17                    B.  *Medical Need*

18   Plaintiff contends he was denied adequate medical care when: (1) Defendant Robertson

19   was unable to assess Plaintiff's medical needs; (2) Defendant Delp made blanket statements

20   about M.S. and took Plaintiff's cane from him; (3) Defendant MacWilliam refused to see

21   _____

22   [9] In Plaintiff's Declaration, he states he sent a grievance to Defendant Robbins regarding the asbestos and lead paint exposure and Defendant Robbins' response was unrelated to his grievance. Dkt. 106, Plaintiff Dec., ¶ 22. In the Amended Complaint, Plaintiff did not allege Defendant Robbins acted with deliberate indifference to Plaintiff's alleged asbestos and lead paint exposure. *See* Dkt. 11. As Plaintiff cannot raise new allegations in a response to a motion for summary judgment, the Court will not consider the factual statements asserting Defendant Robbins ignored Plaintiff's grievance regarding exposure to toxins contained in Plaintiff's Declaration. *Pickern*, 457 F.3d at 965; *McNeely*, 344 Fed. Appx. at 319.

23

24

Plaintiff; and (4) WCC Medical refused to treat Plaintiff's chronic migraines and digestive

dysfunction. Dkt. 11, ¶¶ 75, 80, 81, 97, 104.

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary

and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation

omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992). An Eighth Amendment medical claim

has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the

defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1991),

*overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en

banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in

further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974

F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable

doctor or patient would find important and worthy of comment or treatment; the presence of a

medical condition that significantly affects an individual's daily activities; or the existence of

chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for

medical treatment." *Id.* at 1059-1060.

If a plaintiff shows he suffered from a serious medical need, he must then show the

prison officials responded to the need with deliberate indifference. *See Farmer*, 511 U.S. at 834.

Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure

to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant

must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id*. A

prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious

medical needs "unless the official knows of and disregards an excessive risk to inmate health or

1    safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the

2    inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

3    inference." *Id.*

4          1.    *Defendant Robertson*

5          Defendants' evidence shows Defendant Robertson, a physician's assistant, treated

6    Plaintiff on six occasions while Plaintiff was housed at WCC. Dkt. 95, Robertson Dec., ¶¶ 2, 3.

7    Defendant Robertson first treated Plaintiff on October 28, 2015 when Plaintiff presented to sick

8    call with a history of M.S., complaints of chronic headaches, and a request to increase

9    medications. *Id.* at ¶ 5. Plaintiff declined a physical examination and Defendant Robertson

10   advised Plaintiff: (1) that he would order Plaintiff's medical records; (2) to await the arrival of

11   the records; and (3) to contact the medical department if concerns arose. *Id.* at ¶ 5 & p. 7.

12         Defendant Robertson next treated Plaintiff on November 1, 2015 for complaints of

13   migraine headaches. *Id.* at ¶ 6 & p. 9. Plaintiff refused to cooperate with strength and

14   coordination exercises. *Id.* at ¶ 6. One month later, on December 1, 2015, Defendant Robertson

15   treated Plaintiff for complaints of chronic migraines. *Id.* at ¶ 7. A physical examination was not

16   completed because Plaintiff was disruptive, combative, and non-compliant. *Id.* at ¶ 7 & p. 21.

17   Plaintiff was escorted from the medical floor. *Id.*

18         Plaintiff was seen by Defendant Robertson on December 10, 2015 with complaints of

19   sinus congestion and headache. *Id.* at ¶ 8 & p. 23. Defendant Robertson diagnosed Plaintiff with

20   an upper respiratory infection and advised Plaintiff to return if concerns arose. *Id.* at ¶ 8 & p. 23.

21   Plaintiff was treated by Defendant Robertson again on December 21, 2015 for complaints of

22   hemorrhoids. *Id.* at ¶ 9 & p. 25. Plaintiff declined a physical examination and Defendant

23   Robertson prescribed cream for the hemorrhoids. *Id.* at ¶ 9 & p. 23.

24

1    Defendant Robertson last treated Plaintiff on January 11, 2016 when Plaintiff presented

2    to sick call in IMU with dry skin. *Id*. at ¶ 10 & p. 28. Plaintiff did not report any other concerns.

3    *Id*. at ¶ 10 & p. 28.

4    Plaintiff's evidence shows, on October 24, 2015,[10] Plaintiff was seen by Defendant

5    Robertson for a medical evaluation. Dkt. 106, Plaintiff's Dec., ¶ 5. Defendant Robertson was

6    hostile towards Plaintiff and yelled that Plaintiff had too many issues and needed to sign up for a

7    sick call. *Id*. Plaintiff states he was never medically evaluated in violation of the prison policies

8    and procedures. *Id*. Plaintiff's evidence also shows, during three or four sick call visits,

9    Defendant Robertson would become argumentative and confrontational and end the sick call

10    prematurely without addressing Plaintiff's needs. *Id*. at ¶ 25. Further, Defendant Robertson told

11    staff Plaintiff could walk and did not need a cane or wheelchair. *Id*.

12    First, Plaintiff provides only conclusory statements arguing Defendant Robertson did not

13    provide Plaintiff with adequate treatment because he would end appointments without addressing

14    all of Plaintiff's medical needs. The medical records show Defendant Robertson provided

15    Plaintiff with medical treatment each time Plaintiff was seen by Defendant Robertson. At each

16    appointment, Defendant Robertson addressed Plaintiff's concerns and attempted to resolve any

17    medical issues. Plaintiff often refused physical examinations or was disruptive and could not be

18    examined. Plaintiff does not dispute the evidence showing he refused physical examinations and

19    acted in a disruptive manner. *See* Dkt. 11, 106. At most, it appears Plaintiff disagrees with the

20    course of treatment followed by Defendant Robertson, which is not sufficient to show deliberate

21    indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (finding mere

22    _____

23    [10] In his Declaration, Plaintiff states he was seen on October 24, 2016. *See* Dkt. 106, Plaintiff's Dec., ¶ 5.
     However, based on the record as a whole, Plaintiff was housed at WCC in October of 2015. Therefore, it appears

24    Plaintiff incorrectly stated the medical evaluation happened in 2016.

1   differences of opinion between a prisoner and prison medical staff or between medical

2   professionals regarding the proper course of treatment does not give rise to a § 1983 claim).

3          The Court notes Plaintiff's Declaration states Defendant Robertson terminated medical

4   appointments because he was angry with Plaintiff. *See* Dkt. 11, 106. The objective medical

5   records, however, belie Plaintiff's evidence. For example, Plaintiff's medical records show, at

6   each appointment, Defendant Robertson recorded Plaintiff's subjective complaints, the objective

7   report, and his assessment and then created a treatment plan. *See* Dkt. 93, pp. 7, 21, 23, 25, 28.

8   Further, simply because Defendant Robertson ended appointments early because he was angry

9   with Plaintiff does not, alone, show Defendant Robertson was deliberately indifferent to

10  Plaintiff's serious medical needs. Therefore, the Court finds Plaintiff's conclusory statements

11  that Defendant Robertson did not provide Plaintiff with adequate treatment because he was angry

12  with Plaintiff is not sufficient to overcome Defendant Robertson's summary judgment showing.

13  *See Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (finding "Plaintiffs' sanitized version

14  of the incident cannot control on summary judgment when the record as a whole does not

15  support that version."); *Celotex*, 477 U.S. at 324 (the nonmoving party must go beyond his or her

16  own pleadings and designate "specific facts showing that there is a genuine issue for trial").

17         Second, Plaintiff provides a conclusory allegation stating Defendant Robertson told WCC

18  staff Plaintiff did not need a cane. There is no evidence showing Defendant Robertson was aware

19  Plaintiff needed a cane. As Defendant Robertson was not subjectively aware that Plaintiff needed

20  a cane, there is no evidence showing he acted with deliberate indifference to Plaintiff's serious

21  medical needs when he allegedly told WCC staff Plaintiff did not need a cane.

22         In conclusion, Plaintiff has failed to show Defendant Robertson was aware of and acted

23  with deliberate indifference to Plaintiff's serious medical needs. Therefore, Plaintiff has failed to

24

1  rebut Defendant Robertson's summary judgment showing. Accordingly, the Court recommends

2  Defendant Robertson Motion be granted.

3        2.  *Defendant Delp*

4        Defendants' evidence shows Defendant Delp was present at the sick call on October 28,

5  2015 when Plaintiff was treated by Defendant Robertson. Dkt. 67, Delp Dec., ¶ 6; Dkt. 67-1.

6  During the appointment, Plaintiff would not stay on topic and refused to submit to a physical

7  examination. Dkt. 67, Delp Dec., ¶ 6; Dkt. 67-1. "At that point, the sick call visit was ended."

8  Dkt. 67, Delp Dec., ¶ 6.

9        On December 29, 2015, Plaintiff indicated he could not make a bowel movement without

10  the use of his cane. *Id*. at ¶ 7; Dkt. 67-2. Defendant Delp understood Plaintiff was not allowed to

11  have his cane in IMU because of security purposes and only needed his cane to walk long

12  distances. Dkt. 67, Delp Dec., ¶ 7; Dkt. 67-2. Further, from a medical standpoint, it was not safe

13  for Plaintiff to transfer from his wheelchair to the toilet using his cane. Dkt. 67, Delp Dec., ¶ 7;

14  Dkt. 67-2. Defendant Delp offered to provide Plaintiff with training/education on how to transfer

15  from his wheelchair to the toilet, but Plaintiff refused. Dkt. 67, Delp Dec., ¶ 7; Dkt. 67-2. He

16  later told Defendant Delp he had been educated on how to transfer from his wheelchair by a

17  physical therapist. Dkt. 67, Delp Dec., ¶ 7; Dkt. 67-2. On two occasions, Defendant Delp

18  observed Plaintiff kick his blankets off with his legs and feet, sit up, and transfer himself from

19  his bed to his wheelchair using the aid of his legs and feet without any difficulty. Dkt. 67, Delp

20  Dec., ¶ 8; Dkt. 67-3.

21        Plaintiff's evidence shows, on October 24, 2015, Plaintiff was seen by Defendant

22  Robertson for a medical evaluation. Dkt. 106, Plaintiff's Dec., ¶ 5. Defendant Delp was present

23  and told Defendant Robertson to not let Plaintiff bother him. *Id*. Additionally, Defendant Delp

24

1  told staff Plaintiff could walk and did not need a cane or wheelchair and took his cane, which he

2  needed. *Id*.; Dkt. 11, ¶ 97.

3        Plaintiff is asserting Defendant Delp violated his constitutional rights when she denied

4  him access to his cane and told staff he could walk. *See* Dkt. 11. Defendant Delp has presented

5  evidence showing she understood Plaintiff needed a cane only to walk long distances and was

6  not allowed to have a cane in IMU for security reasons. Further, Defendant Delp saw Plaintiff

7  use his legs and feet to transfer from his bed to his wheelchair. The evidence shows Defendant

8  Delp did not have subjective knowledge that Plaintiff needed a cane and was unable to walk.

9  Therefore, even if Defendant Delp denied Plaintiff access to his cane and told staff Plaintiff

10 could walk, there is no evidence showing she was deliberately indifferent to Plaintiff's serious

11 medical needs because she did not know of and disregard an excessive risk to Plaintiff's health

12 or safety. *See Farmer*, 511 U.S. at 837.  Accordingly, the Court recommends DOC Motion be

13 granted as to the deliberate indifference claim alleged against Defendant Delp.

14        3.  *Defendant MacWilliam*

15        Plaintiff contends "D. MacWilliam –W.C.C.-IMU-Psychologist, refused to see Plaintiff."

16 Dkt. 11, ¶ 104. Plaintiff provides no information showing Defendant MacWilliam was aware

17 Plaintiff was suffering from a serious medical need and acted with deliberate indifference to that

18 need. In fact, Plaintiff fails to provide enough information to show Defendant MacWilliam was

19 aware Plaintiff was seeking treatment from him. As Plaintiff has provided only threadbare

20 allegations against Defendant MacWilliam, the Court recommends DOC Motion be granted as to

21 the claim alleged against Defendant MacWilliam.

22

23

24

4. *WCC Medical*

Plaintiff also alleges WCC Medical refused to treat his chronic migraines and digestive dysfunction. *See* Dkt. 11, ¶¶ 80-81. "WCC Medical" is not a named Defendant in this case. *See* Dkt. 11. Further, Plaintiff must name an individual who committed the alleged constitutional violation. WCC Medical is not an individual. As Plaintiff must identify the named Defendant who harmed him, the Court finds Plaintiff has not stated a claim for which relief can be granted regarding WCC Medical's refusal to treat his migraines and digestive dysfunction.

**IV.    Due Process Violation**

In his Amended Complaint, Plaintiff alleges his due process rights were violated when Defendant Dunnington failed to hold a hearing after Plaintiff was infracted on December 18, 2015. *See* Dkt. 11, ¶¶ 88, 93. Plaintiff appears to allege he was sanctioned without being present at the hearing. *See id.*

Pursuant to the Due Process Clause of the Fourteenth Amendment, "no state shall 'deprive any person of life, liberty, or property without due process of law.'" *Toussaint v. McCarthy*, 801 F.3d 1080, 1089 (9th Cir. 1986), *overruled on other grounds*, *Sandin v Conner*, 515 U.S. 472 (1995). The due process guarantees of the Fourteenth Amendment thus "apply only when a constitutionally protected liberty or property interest is at stake." *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993).

The evidence shows Plaintiff received disciplinary hearings for all three infractions identified in the Amended Complaint. *See* Dkt. 63, Dunnington Dec., ¶4. On the way to the hearing for the December 18, 2015 infraction, Plaintiff was being argumentative, disrespectful, and disruptive. Dkt. 63-2. He was returned to his cell and the hearing was conducted in his

1   absence. *Id*. Plaintiff was found guilty and was sanctioned to 7 days of segregation, which he had

2   served waiting for the disciplinary hearing. *Id*.

3          The evidence fails to show Plaintiff's placement in administrative segregation as a result

4   of the December 18, 2015 infraction implicated a liberty interest. *See Sandin*, 515 U.S. at 485-86

5   (administrative segregation itself does not ordinarily implicate a protected liberty interest); *See*

6   *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (segregation pending disciplinary hearing

7   does not implicate due process). As Plaintiff did not have a liberty interest in being housed in

8   IMU pending a disciplinary hearing or remaining in general population, the failure to be present

9   at the disciplinary hearing where he was sanctioned to time-served in administrative segregation

10  did not violate his due process rights. *See May*, 109 F.3d at 565 (9th Cir. 1997). The Court finds

11  Plaintiff failed to show a due process violation based on his failure to be present at a disciplinary

12  hearing. Accordingly, the Court recommends DOC Defendants' Motion be granted as to

13  Plaintiff's due process claim.

14          **V.      Americans with Disabilities Act**

15          Plaintiff alleges Defendants violated his rights under the ADA when they failed to

16  provide him with an ADA compliant cell. Dkt. 11. "To state a claim of disability discrimination

17  under Title II of the ADA, the plaintiff must allege four elements: (1) the plaintiff is an

18  individual with a disability, (2) the plaintiff is otherwise qualified to participate in or receive the

19  benefit of some public entity's services, programs, or activities, (3) the plaintiff was either

20  excluded from participation in or denied the benefits of the public entity's services, programs, or

21  activities, or was otherwise discriminated against by the public entity, and (4) such exclusion,

22  denial of benefits, or discrimination was by reason of the plaintiff's disability." *Thompson v.*

23

24

1   *Davis*, 295 F.3d 890, 895 (9th Cir.2002); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th

2   Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001); 42 U.S.C. § 12132.

3        A public entity can be liable for damages under Title II of the ADA "if it intentionally or

4   with deliberate indifference fails to provide meaningful access or reasonable accommodation to

5   disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Deliberate

6   indifference requires: (1) "knowledge that a harm to a federally protected right is substantially

7   likely, and" (2) "a failure to act upon that the (sic) likelihood." *Duvall*, 260 F.3d at 1139.

8        The evidence shows Plaintiff was provided with a Health Status Report for a wheelchair

9   and a lower bunk during his initial intake medical review at WCC. Dkt. 65, Longano Dec., ¶ 5.

10  "Plaintiff was housed in three different general population cells (C01, C02, and D03) in R-5

11  Unit. At WCC, the R-5 Unit is where inmates requiring the use of a wheelchair are housed." Dkt.

12  62, Goodenough Dec., ¶ 4. Plaintiff was housed in two different cells (D110 and E111) in IMU.

13  *Id*. at ¶ 5. Cells C01, C02, and E111 were equipped with grab bars. While there were no grab

14  bars in cell D03 and D110, these cells were equipped with surfaces which could be utilized as a

15  grab bar. *Id*. at ¶¶ 4, 5. All five cells were wide enough to fit a standard size wheelchair and there

16  was no lip which would impede the wheelchair's ability to roll in to the cells. *Id*. There is also a

17  wheelchair ramp leading up to the ADA cells in the R-5 Unit. *Id*.

18       Defendant Delp also offered to provide Plaintiff with training/education on how to

19  transfer from his wheelchair to the toilet, bed, and shower. Dkt. 67, Delp Dec., ¶ 7. Plaintiff

20  refused the training and stated he had already been educated by a physical therapist. *Id*. The

21  evidence also shows Defendant Delp witnessed Plaintiff transfer himself from his bed to his

22  wheelchair using the aid of his legs and feet without any difficulty. *Id*. at ¶ 8. Further, during his

23  time in IMU, Plaintiff was offered assistance in transferring from his wheelchair to the shower

24

chair because his wheelchair was not able to go into the IMU shower, but Plaintiff refused

assistance. Dkt. 66, Broumley Dec., ¶ 5. Plaintiff states he was unable to shower while housed in

IMU, and states no one was willing to lift him into the shower. Dkt. 106, Plaintiff Dec., ¶ 23.

Plaintiff also states he was escorted to the infirmary for a shower, which was wheelchair

accessible and equipped with a grab bar and shower chair. *Id*. at ¶ 24.

The evidence shows Plaintiff was provided with a wheelchair and housing which fit a

standard wheelchair. Plaintiff provides no evidence showing he was excluded from activities

because of his disability. Plaintiff provides evidence that he was verbally harassed because he

took too long to travel places at WCC and that he was unable to shower while housed in IMU.

*See* Dkt. 106, Plaintiff Dec. However, Plaintiff fails to provide any evidence showing any

Defendant, including the DOC, acted intentionally or with deliberate indifference in failing to

provide meaningful access or reasonable accommodations. Specifically, there is no evidence

showing Defendants were aware Plaintiff needed additional accommodations. Further, when

Plaintiff was unable to shower in IMU, WCC employees took Plaintiff to the infirmary for a

shower.

The undisputed evidence shows Plaintiff was provided with accommodations for his

disability. Further, there is no evidence showing Defendants acted with deliberate indifference in

failing to provide Plaintiff with reasonable accommodations for his disability. As Plaintiff has

not shown his ADA rights were violated, the Court recommends DOC Motion and Robertson

Motion be granted as to the ADA claim.

## VI.    Access to Grievance Process

Plaintiff alleges Defendants Delp, Patty, Griffin, Robbins, and Hayward took actions

which denied Plaintiff access to the grievances process. *See* Dkt. 11, ¶¶ 97, 98, 99, 105, 107.

1    Specifically, Plaintiff contends Defendants Patty, Griffin, and Robbins did not respond to his

2    kites, requests, or grievances or responded incorrectly. *See id*. at ¶¶ 98, 99, 105. Plaintiff also

3    asserts Defendants Hayward and Delp intercepted Plaintiff's kites and grievances. *See id*. at ¶¶

4    97, 107.

5         Under *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003), Plaintiff has no

6    constitutional right to a prison grievance system. *See Riley v. Roach,* 572 Fed.Appx. 504, 507

7    (9th Cir. 2014) ("Inmates do not possess a constitutional right to a prison grievance system.").

8    Because an inmate does not have a constitutional right to a grievance process, an allegation of a

9    denial of access to the grievance process fails to state a claim. *Ramirez*, 334 at 860. Therefore,

10   the Court recommends dismissing Plaintiff's access to grievance process claim against

11   Defendants Delp, Patty, Griffin, Robbins, and Hayward for failure to state a claim because

12   inmates do not possess a constitutional right to a prison grievance system. *See Mann v. Adams*,

13   855 F.2d 639, 640 (9th Cir. 1988).

14        **VII.    Conspiracy**

15        In his Amended Complaint, Plaintiff alleges, in a conclusory manner, Defendant Patty was

16   "in league" with Defendant Delp, Defendant Allison Comstock was "in league" with Defendant

17   Sgt. Comstock, and Defendant Brooks was "in league" with Defendants Kinnaman and Barcelona.

18   Dkt. 11, ¶¶ 98, 110, 113. The Court interprets Plaintiff's allegations of Defendants being "in

19   league" with one another as a claim of civil conspiracy.

20        A civil conspiracy is a combination of two or more persons who, by some concerted action,

21   intend to accomplish some unlawful objective for the purpose of harming another which results in

22   damage. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). To prove a civil

23   conspiracy, the plaintiff must show the conspiring parties reached a unity of purpose or common

24

1  design and understanding, or a meeting of the minds in an unlawful agreement. *Id.* To be liable,

2  each participant in the conspiracy need not know the exact details of the plan, but each participant

3  must at least share the common objective of the conspiracy. *Id.* A defendant's knowledge of and

4  participation in a conspiracy may be inferred from circumstantial evidence and from evidence of

5  the defendant's actions. *Id.* at 856–57. Conclusory allegations of conspiracy, however, are not

6  enough to support a § 1983 conspiracy claim. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.

7  1989).

8         Here, Plaintiff provides no facts to support the allegations that Defendants Patty, Delp, A.

9  Comstock, Sgt. Comstock, Brooks, Kinnaman, and Barcelona conspired against Plaintiff. *See* Dkt.

10  11, ¶¶ 98, 110, 112. Plaintiff does not allege as to what Defendants Patty, Delp, A. Comstock, and

11  Sgt. Comstock were "in league" about. *Id.* at ¶¶ 98, 110. Regarding Defendants Brooks,

12  Kinnaman, and Barcelona, Plaintiff merely states the three were "in league" "concerning the

13  frivolous infractions." *Id.* at ¶ 113. Plaintiff simply makes a conclusory statement about each group

14  of Defendants stating they are "in league" with one another. *See id.* at ¶¶ 98, 110, 113. Further, in

15  his Response and Declarations, Plaintiff does not assert any argument or evidence regarding the

16  alleged conspiracy claims. *See* Dkt. 106, 111. Thus, the Court finds Plaintiff has not stated a

17  conspiracy claim against Defendants Patty, Delp, A. Comstock, Sgt. Comstock, Brooks,

18  Kinnaman, and Barcelona. *See Burns*, 883 F.2d at 821; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

19  (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

20  statements, do not suffice."); *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th

21  Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state

22  section 1983 claims). Accordingly, the Court recommends the conspiracy claims alleged against

23

24

1  Defendants Patty, Delp, A. Comstock, Sgt. Comstock, Brooks, Kinnaman, and Barcelona be

2  dismissed.

3    **VIII.   Access to Courts**

4    In his Amended Complaint, Plaintiff contends Defendant Thompson denied Plaintiff access

5  to the law library by keeping legal documents from Plaintiff, failing to prioritize deadlines, being

6  argumentative and confrontational, and not answering requests of access to the law library. Dkt.

7  11, ¶ 111. Plaintiff did not provide any argument or evidence regarding the claims against

8  Defendant Thompson in his Response or Declaration. *See* Dkt. 106, 111.

9    Inmates have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*,

10  430 U.S. 817, 828 (1977). In *Bounds,* the Supreme Court held the right of access imposes an

11  affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by

12  establishing an adequate law library or by providing adequate assistance from persons trained in

13  the law. *Id.* at 828. In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court held a prisoner

14  must show some actual injury resulting from a denial of access in order to allege a constitutional

15  violation.  *Id*. at 349.

16    To establish he suffered an actual injury, Plaintiff must show "actual prejudice with respect

17  to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a

18  claim." *Lewis*, 518 U.S. at 348; *Christopher v. Harbury*, 536 U.S. 403, 415, (2002); *Nevada Dep't*

19  *of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011); *Phillips v. Hurst*, 588 F.3d 652, 655 (9th

20  Cir. 2009). The right of access to the courts is limited to non-frivolous direct criminal appeals,

21  habeas corpus proceedings, and § 1983 cases. *See Lewis*, 518 U.S. at 353 n. 3, 354-55. "Failure to

22  show that a 'nonfrivolous legal claim has been frustrated' is fatal to [an access to courts] claim."

23  *Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (*quoting Lewis*, 518 U.S. at 353 & n. 4).

24

1    Plaintiff has not alleged any actual injury in his Amended Complaint. *See* Dkt. 11, ¶ 111. In

2    fact, Plaintiff provides only a conclusory allegation that Defendant Thompson denied Plaintiff law

3    library access. *See id*. Plaintiff does not allege he was unable to pursue a non-frivolous direct

4    criminal appeal, habeas corpus proceeding, or § 1983 case as a result of Defendant Thompson's

5    actions. *Id*. As Plaintiff does not allege an injury, Plaintiff has not stated an access to courts claim

6    against Defendant Thompson. Accordingly, the Court recommends Defendant Thompson be

7    dismissed from this action.

8                                **CONCLUSION**

9    Based on the foregoing, the Court concludes Plaintiff has failed to sufficiently rebut

10   Defendants' summary judgment showings regarding Plaintiff's retaliation, Eighth Amendment,

11   due process, and Americans with Disabilities Act ("ADA") claims.[11] The Court also finds

12   Plaintiff has failed to state a claim for which relief can be granted as to his access to the

13   grievance process, conspiracy, and access to courts claims. Accordingly, the Court recommends

14   the DOC Motion and the Robertson Motion be granted.

15   As the Court concludes Plaintiff has either failed to state a claim or failed to rebut

16   Defendants' summary judgment showing as to all claims contained in the Amended Complaint,

17   the Court recommends Plaintiff's Motion for A TRO and Preliminary Injunction (Dkt. 115) be

18   denied as moot and this case be closed.

19   Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

20   fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

21   6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

22   _____

23   [11] The Court notes Defendants also argue they are entitled to qualified immunity. *See* Dkt. 59, 92. As the
     Court concludes Plaintiff has either failed to state a claim or failed to rebut Defendants' summary judgment

24   showings Plaintiff's constitutional rights were violated, the Court will not discuss Defendants' additional argument.

1    review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

2    imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

3    August 11, 2017, as noted in the caption.

4        Dated this 25th day of July, 2017.

5

6

7    David W. Christel
     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24